AUSTIN, (SHELTON v.) See Case No. 12,-752.

AUSTIN, (TRECOTHICK v.) See Case No. 14,164.

AUSTIN, (UNITED STATES v.) See Case No. 14,479.

AUSTIN, The, (UNITED STATES v.) See Case No. 14,480.

———

## Case No. 667.

### The AUSTRALIA.

[3 Ware, 240.] [1]

District Court. D. Maine. Oct. 28, 1859.

SEAMEN—SHIPPING ARTICLES—UNUSUAL TERMS—ADMIRALTY—WITNESSES.

1. If a seaman proves unfit for the service for which he shipped, the master may degrade him to another duty.

2. When unusual terms are introduced into a contract, courts of admiralty require that it be explained plainly to the men, or it will be set aside and they must be presumed to be engaged on the usual terms.

[See The Sarah Jane, Case No. 12,348; Brown v. Lull, Id. 2,018; The Cypress, Id. 3,530; The Almatia, Id. 254; The Samuel Ober, 15 Fed. 621; Trecartin v. The Rochambeau, Case No. 14,163.]

3. The law of the U. S. of 1790, requires every contract to be in writing, and if not, the law is not binding on the men. They may leave the ship at any time, and demand wages at the highest price paid at that port at any time within three months before their engagements.

4. The act of Maine, admitting parties to be witnesses, does not apply to the admiralty.

5. The practice is to allow either party to examine the other on interrogatories, and the answers they give are evidence in the case. But the answers, though under oath, are not properly evidence.

[In admiralty. Libel in rem by Michael De Lory against the Australia for wages. Decree for libellant.]

Mr. Sewall, for libellant.

M. Smith, for respondent.

WARE, District Judge. Michael De Lory, about 21 years of age, engaged at Boston to go in the Australia to an eastern port for her cargo, and thence to Jacksonville in Florida and some port in the West Indies and to her port of discharge in the United States. He engaged to go as cook, provided his services were satisfactory in that office. He made the voyage to Wiscasset, assisted in loading the cargo, and was dismissed for want of competency as a cook. He was a native of New Brunswick, entirely uneducated, as he could neither write nor read, and he was shipped without signing shipping articles. He brings this action for his wages, for damages in being dismissed in a strange port, and suing as well for the United States as himself, for the penalty of twenty dollars provided in the first section of the act of 1790, [1 Stat. 131.]

On all the evidence I am disposed to admit

———

[1] [Reported by George F. Emery, Esq.]

that he was incompetent as a cook for such a vessel, though he had been employed in that capacity in fishing voyages. In this case, had he been shipped regularly, the rule of the maritime law is well settled that the master might have displaced him and put him to other duty. Every person is presumed fit for the duty for which he engages. Quisque spondet puritatem artis suae is a rule of common sense that is found in every system of law. The owner who engaged De Lory has been examined on interrogatories, and says that he was engaged on trial with liberty to dismiss him from the vessel if he proved unacceptable. The libellant has been examined in the same way, and though he acknowledges that he was to serve as cook on trial, and to be dismissed from that employment if he proved not satisfactory, yet that he was to go in the vessel absolutely. It is not probable that he would engage for a voyage eastward, on trial, to be dismissed and find his way home at his own expense, though he might engage as cook on those terms, and he swears positively that he was engaged for the whole voyage. There is a repugnance in the testimony, but in this circumstance only; and in this discrepancy I am disposed to take his word. That he so understood the engagement I have no doubt.

The law of the sea favors a written contract without, perhaps, making it indispensable. But the men are notoriously inattentive to its terms, and oftener than otherwise, sign without reading it. They trust to usage and the law. For this reason, on general principles, if there is anything unusual in the terms, that should be explained to the men in such a manner that they shall understand it and it should be balanced by an adequate compensation, otherwise it will be set aside and the men presumed to be engaged on the usual terms, or those required by law. This is the general law, adapted to the common character of seamen; but that of this country goes farther.

In controversies between the master or owner and the mariners, whether arising on contracts or torts, it is sometimes difficult to hold the balance evenly between them. The former being usually men of education, and always conversant in business, are astute in providing for themselves. But the men, born, perhaps, with a temper naturally choleric and impatient, that natural infirmity augmented rather than checked by a want of education, quickened by the ungovernable and contentious nature of the element to which, by their calling, they are exposed, and always necessitous, think little of the future. They are thoughtless and incautious in these contracts as well as in their general behavior, and it is not uncommon for their precipitancy to be taken advantage of to their injury. But at the same time there are among them some of depraved dispositions, bent on mischief, who watch their opportunity to exasperate their officers and to stir up the crew to disorder and sedition. But they are persons of incautious and hasty tempers, and the truth generally comes out in the testimony. Courts do not fail to mark a disposition radically bad, but they have no right to presume this without proof, and in this case all natural presumptions are in favor of the man, as well from his admitted want of education, as from the appearance of honesty and simplicity when under examination.

By the act of 1790, (1 Stat. 131,) every master of a vessel of fifty tons burthen or more, before he starts on a foreign voyage, or one to a port other than in an adjoining state, is bound to have an agreement in writing containing a description of the voyage and the terms of the engagement, and in default, he is bound to pay his men the highest rate of wages that have been given for three months in that port for the like service, and in addition thereto, a penalty of twenty dollars, to be equally divided between the person suing for the same, and the United States. But by the act of 1840, [5 Stat. 397, cl. 19,] he is subject to a penalty of $100 for a violation of any of the provisions of that act, (No. 19,) one of which, in connection with the act of 1790 and 1803, [2 Stat. 203,] is the having a contract in writing.

How do the owners in this case expect to escape the penal obligations of this act? The only mode is by setting up an agreement to take this man on trial. There is in the act of 1790, § 1, an exception of servants and apprentices. But it is not pretended that De Lory was either, and with every other man must be made a contract in writing. It may be questioned whether the statute does not, by implication, negative the right of taking any other man on trial. Be this as it may, we have the declaration of De Lory himself, taken on interrogatories, that he was engaged for the whole voyage, and the proviso only applied to his officiating as cook. The law of Maine, admitting parties to be examined, (Rev. St. c. 82, § 9,) does not in its terms apply to proceedings in the admiralty, and has been decided not to extend to this court; but according to the course of the admiralty, parties may always be examined on interrogatories on the demand of either party. Though the answer is not properly evidence, being drawn up by the proctors on the statement of the party,—Hutson v. Jordan, [Case No. 6,959;] The Crusader, [Id. 3,456;] Sherwood v. Hall, [Id. 12,777;] Cushman v. Ryan, [Id. 3,515;] Jay v. Almy, [Id. 7,236,]—the answers to the interrogatories, subject as they are, to pass under the ordeal of a cross-examination contrary to the rule of the civil law, are,—1 Ware, 410, [Hutson v. Jordan, supra;] Pothier, Des Obligations, No. 910. De Lory very fairly admits that he was to be removed from the office of cook if, on trial, he proved unsatisfactory. But he is equally positive that he was engaged for the whole voyage. And his answer, supported as

it is by probability, is, I think, true. My opinion is, that he must be allowed his wages, for the time that he served, at the highest rate that was given at that port for three months before his employment, and that, according to the proof, is sixteen dollars a month. He must be allowed damages also for the breach of his contract.

Damages by the common law, and this is the decision of natural law, are given as an indemnity, that is, a sum which would put the person in the same situation as he would have been if the damage had not been done. They are matters of calculation for the most part, if not, are of necessity left to the discretion of the tribunal that awards them, and are sometimes increased and sometimes lessened, according to the nature and circumstances of the injury and of the person who suffers. 2 Pars. Cont. p. 432; Domat Lois Civiles, lib. 3, tit. 5, praeambule; Id. lib. 1, tit. 2, No. 18. If the injury is wanton, that is, if done intentionally, without opening the question on which the authority of great names is arranged on both sides, whether exemplary, vindictive, or penal damages may in any case be given, (2 Greenl. Ev.,) it will be admitted by all that full damages ought to be allowed. The dismissal of a seaman without cause is an injury of this character. If De Lory was not qualified as a cook, he was fit for some employment on the vessel; and this is apparent from the master putting him to other duty besides that of cooking. The case of a seaman thus unexpectedly being thrown out of employment does not call for aggravated damage, but the loss of time is something. It is greater when he is a foreigner, when his natural home is not among us, and he is without friends and is dependent on his own resources. And because in any way in which they are viewed they are small, is no reason why they should be withheld. Besides ordering his wages to be made out at the highest price paid for a cook, I shall allow $10 damages for the breach of contract.

The penalty of $20 is as expressly awarded by the statute as the increased pay, and I see no difficulty in allowing it in a libel for the wages. The libellant has sued for it in the name of the United States as well as his own. Decree $33.51 and costs.